**BAKER ELECTRONICS, INC.,
a Florida corporation,
Plaintiff,**

**v.**

**PENTAR SYSTEMS, INC., a
Washington corporation,
Defendant.**

No. 8:02–cv–652–T–17TGW.

United States District Court,
M.D. Florida.

Aug. 20, 2002.

Robert Keith Robinson, Kevin James Kapusta, Fred E. Moore, Bowman, George, Scheb, Toale & Robinson, Sarasota, FL, for plaintiff.

C. Lawrence Stagg, Anthony John Cuva, Akerman, Senterfitt & Eidson, P.A., Tampa, FL, for defendant.

### ORDER ON DEFENDANT'S MOTION TO DISMISS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant, Pentar Systems, Inc.'s (hereinafter "Pentar"), Motion to Dismiss for Lack of Personal Jurisdiction (Dkt.3) and response thereto (Dkt.7).

### Standard of Review

To subject a defendant to a judgment *in personam,* a plaintiff must make a *prima facie* showing that jurisdiction exists by presenting enough evidence to withstand a motion for directed verdict. *Powercerv Technologies Corp. v. Ovid Technologies,* 993 F.Supp. 1467, 1468 (M.D.Fla.1998) (citation omitted). If the plaintiff pleads enough facts to state a *prima facie* basis for personal jurisdiction, the burden then shifts to the defendant to challenge Plaintiff's allegations by affidavits or other pleadings. *Structural Panels, Inc. v. Texas Aluminum Ind., Inc.,* 814 F.Supp. 1058, 1064 (M.D.Fla.1993) (citation omitted). If the defendant sufficiently challenges the plaintiff's assertions, then the plaintiff must affirmatively support its jurisdictional allegations and may not merely rely upon the factual allegations set forth in the complaint. *Id.*

To determine whether the court may exercise personal jurisdiction over a nonresident defendant, the court must determine: 1) whether the state long-arm statute permits assertion of jurisdiction and 2) whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

### Background

This case involves a relationship between two businesses located on opposite ends of the country. Baker Electronics, Inc. (hereinafter "Baker") is a Florida Corporation, with its principle place of business located in Sarasota, Florida. The following are "facts" taken from the pleadings for the purpose of resolving the instant motion. Baker provides in-flight entertainment systems for private and commercial aircraft, as well as private yachts. It maintains a single manufacturing facility located in Sarasota, Florida.

Pentar Systems, Inc. (hereinafter "Pentar") is a Washington Corporation with its principle place of business located in Bothell, Washington. Pentar specializes in products for commercial avionics, including data interfaces, data communication, and data acquisition systems. Pentar has not previously conducted business in Florida; however, its employees have traveled to this state to attend trade shows for international business development.

While thousands of miles separate these two businesses, both entities somehow came together to embark upon a joint

venture that would provide favorable benefits if the said venture ever came to pass. Baker wished to enter the market of web-based aeronautical cabin file servers. However, it lacked the necessary product and intellectual property to develop this line of business. Pentar, already a market participant in the cabin file server sector, needed capital to further penetrate the market and expand their market presence.

Realizing the endless possibilities of this joint venture, each party traveled to the home state of the other to further discuss the venture. Pentar traveled to Florida, while Baker traveled twice to Washington. During the relationship, Pentar communicated through direct e-mail with Baker concerning the venture; in addition to approximately twenty communications where Pentar provided information to Baker. Both parties were confident about the future of the proposed venture and entered into a Memorandum of Understanding (MOU) through electronic means, specifically electronic mail and telephone. The MOU laid out a detailed business plan, which was broken down into three phases, with varying degrees of involvement from both parties.

Subsequent to signing the MOU, Baker purchased three cabin file servers from Pentar, who delivered the three servers to Baker in Sarasota, Florida. Baker also provided a one hundred thousand dollar ($100,000.00) payment to Pentar in exchange for specification documents that would allow Baker to develop servers similar to the three recently delivered. Pentar provided some specification documents to Baker, through electronic mail, but allegedly failed to provide all documents as agreed upon in the MOU. This alleged failure is the seed from which the present action grows. Baker sought relief in state court, which was subsequently removed to this Court. In response to the complaint, Pentar filed its motion to dismiss for lack of personal jurisdiction under the Florida long-arm statute.

## DISCUSSION

### I. Florida's Long Arm Statute

Florida's Long–Arm Statute provides, in pertinent part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, or engaging in, or carrying on a business or business venture in state or having an office or agency in this state;

(b) Committing a tortious act within this state;

. . . . .

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

. . . . .

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

*Fla.Stat.* § 48.193. Because the Florida long-arm statute is governed by state law, federal courts are required to construe it as would the Florida Supreme Court. *Kim v. Keenan,* 71 F.Supp.2d 1228, 1233 (M.D.Fla.1999) (citation omitted). Additionally, Florida's long-arm statute must be strictly construed, and the burden of proving facts that justify use of the statute is on the plaintiff. *Id.* (citation omitted).

### a. Florida Statutes Section 48.193(1)(a)—Operating a Business

■ To establish that a defendant is carrying on a business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir.1996) (citing *Dinsmore v. Martin Blumenthal Associates, Inc.*, 314 So.2d 561, 564 (Fla.1975)); *see generally Suffolk Federal Credit Union v. Continental Insurance Co.*, 664 So.2d 1153, 1154 (Fla. 3d DCA 1995) (stating "that the making of a [single] installment loan to a Florida borrower, secured by a boat located in Florida, with lien recorded in Florida constitutes a business venture for purposes of the long arm statute.").

Baker demonstrates the activities to this dispute satisfy Section 48.193(1)(a), *Florida Statutes*. Pentar collaborated with Baker to expand its market presence while Baker collaborated with Pentar to obtain expertise for inflight systems. Realizing the possible benefits of this joint venture, a high-ranking Pentar representative traveled to Florida to discuss the possibility of developing the Pentar–Baker relationship. Baker employees traveled to Washington to discuss the issues as well. Baker and Pentar entered into the MOU where both parties agreed to engage in certain efforts to develop this budding relationship. Pentar even delivered three cabin file servers to Baker's Sarasota, Florida warehouse. Was this a business relationship? Clearly yes! The parties engaged in interstate travel, exchanged communications, and injected goods into interstate commerce to effectuate a business relationship. Both parties contemplated a business venture by their actions. Personal jurisdiction may be asserted against Pentar under Section 48.193(1)(a), *Florida Statutes*.

### b. Florida Statutes Section 49.193(1)(g)—Breach of Contract

■ To exercise long arm jurisdiction for a breach of contract a party must demonstrate the defendant's failure to perform acts required by the contract to be performed in Florida. Section 48.193(1)(g), *Florida Statutes*. Such a failure to perform the terms of the contract constitutes a breach and subjects the defendant to Florida's long arm statute. *See, e.g., High Country Insurance Agency v. Admin. Management Services Syndicate, Ltd,* 549 So.2d 776, 776 (Fla. 3d DCA 1989) (stating that "refusal to make contractually required payments caused foreseeable injuries in Florida ... and does not offend due process"); *Pellerito Foods, Inc. v. American Conveyors Corp.*, 542 So.2d 426 (Fla. 3d DCA 1989) (Extending the long-arm statute when out-of-state corporation traveled to home state twice and was required to remit payment to home state).

The amended MOU called for Baker to remit payment to Pentar in exchange for intellectual property and other design specifications. Baker alleges it remitted one hundred thousand dollars ($100,000.00) to Pentar, who never reciprocated by delivering the design specifications. Moreover, the parties agreed to use their best efforts when entering into the MOU. Pentar, as alleged, was required to perform this portion of the contract in Florida; *to wit,* deliver the design specifications to Baker's Sarasota warehouse. Under Florida law, it breached the agreement and is subject to Florida's long arm statute.

Notwithstanding the satisfaction of personal jurisdiction, this Court must determine whether subjecting Pentar to this Court's jurisdiction will comport with traditional notions of due process.

## II. Due Process

■ Due process requires the defendant to have certain minimum contacts with the forum, such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l. Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154.

### a. Minimum Contacts

While the Florida long-arm statute does extend to Pentar's activities, this Court must determine whether the activities were sufficient to maintain minimum contacts with this state. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "The Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Companies like Pentar, which admittedly has isolated and sporadic contact with Florida, may still maintain minimum contacts with this state under the doctrine of specific jurisdiction. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995) (explaining the ability for the court to exercise jurisdiction on actions based upon a specific incident); *but see Response Reward Systems, L.C. v. Meijer, Inc.*, 189 F.Supp.2d 1332, 1338 (M.D.Fla.2002) (stating that internet provider's contact with forum state was insufficient to maintain minimum contacts when provider did not maintain requisite minimum contacts within state). This court may exercise specific jurisdiction when the suit arises out of, or is related to, a party's single or isolated contact with the forum. *Meijer*, 189 F.Supp.2d at 1338. The court may exercise specific jurisdiction over a non-resident if the defendant had purposefully directed his activities to the forum state, and the alleged injury to the forum residents arise out of those activities. *Id.* The non-resident's activities and connection with the forum state must be such that the defendant would "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The Eleventh Circuit utilizes a three-part test for determining whether the minimum contacts requirement has been met: 1) the contacts must be related to the Plaintiff's cause of action; 2) they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the state; and 3) the defendant's contacts with the state must be such that the defendant would reasonably anticipate being haled into court there. *Response Reward Systems*, 189 F.Supp.2d at 1338 (citing *Kim*, 71 F.Supp.2d 1228).

Did Pentar avail itself to Florida by joining with Baker in a joint venture? The facts set out here demonstrate that Pentar traveled to Florida to discuss the Baker–Pentar relationship. Pentar delivered three cabin file servers to Baker before the relationship soured. Pentar also transmitted information to Baker through electronic mail and facsimile. Additionally, Pentar communicated with Baker on numerous occasions to promote the future of the newly formed joint venture. At no time were these communication directed towards anyone but a specific Florida resident, Baker. Had Pentar not been in contact with Baker, Baker would have never

remitted one hundred thousand dollars ($100,000.00) to Pentar in exchange for the documents. These activities all relate to Baker's complaint, which demonstrates Pentar purposefully availed itself to this state. Moreover, these activities would surely provide Pentar with the reasonable anticipation of being haled into this Court if the developing deal soured. To assert the contrary would bespeak against the notion of minimum contacts. This Court finds that Pentar had sufficient minimum contacts with the state of Florida.

### b. Fair Play and Substantial Justice

"When determining whether the exercise of jurisdiction would offend 'traditional notions of fair play and substantial justice,' the court must consider such factors as the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief." *Response Reward Systems,* 189 F.Supp.2d at 1339 (*citing World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559).

The burden on Pentar is not so substantial as to effectuate a dismissal in this case. Pentar found it convenient to travel to Sarasota to discuss the business deal. In all likelihood, had the deal continued, Pentar would have traveled to the sunny shores of Florida again. Moreover, if this Court were to dismiss this action for lack of jurisdiction, out-of-state businesses could find comfort in dealing with Florida businesses, including delivering goods to this state, without facing the jurisdiction of this Court. This, the Court cannot do. It would be contrary to the interests of Baker to allow Pentar to have acted on, and possibly benefited from, a Florida business transaction and now withstand a lawsuit in this forum. Baker has shown that haling Pentar into this jurisdiction comports with traditional notions of fair play and substantial justice. Accordingly, it is

**ORDERED** that Defendant Pentar's Motion to Dismiss (Dkt.3) is **denied** and the Defendant **shall have** ten days to answer the complaint.